SECOND DIVISION

No. 1-09-0495

| | | |
|---|---|---|
| DIANE M. BRUZAS, JEROME N. ZURLA and GARY A. WEINTRAUB, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees and Cross-Appellants, | ) ) ) | |
| v. | ) ) | |
| IRENE E. RICHARDSON, | ) ) ) | Honorable Dennis J. Burke, |
| Defendant-Appellant and Cross-Appellee. | ) ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

### OPINION

Defendant-appellant and cross-appellee Irene Richardson appeals from a jury

award in favor of plaintiffs-appellees and cross-appellants Diane M. Bruzas, Jerome N.

Zurla and Gary A. Weintraub (plaintiffs), awarding them interest on attorney fees

plaintiffs incurred in representing Irene in divorce proceedings.[1]  On appeal, Irene

---

[1] Irene died during the pendency of the litigation and her children, Edward J.

Richardson, Jr., and Patricia Ann Schoenbrun, were substituted as special

representatives of her estate.  Bruzas also died during the pendency of the litigation.

The parties filed a motion to maintain the original names in the caption, which this court

contends that the judgment below should be reversed or a new trial should be held because: (1) an oral contract for interest between an attorney and client is void *ab initio* as a matter of public policy; (2) plaintiffs exerted undue influence on Irene when the alleged agreement to pay interest was made; (3) plaintiffs breached their fiduciary duty to Irene by failing to disclose to Irene that they were going to collect interest on their fees; (4) the jury's finding that a contract to pay interest existed was against the manifest weight of the evidence; (5) the jury's verdict was a compromised verdict; and, (6) the jury instruction regarding fiduciary duty, as given, was improper. Plaintiffs cross-appeal from the trial court's dismissal of the equitable claims set forth in their complaint. For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

Edward J. Richardson and Irene E. Richardson were married in 1963. From approximately 1960 until about 1980, Irene worked for Edward's family business, Richardson Electronics. Irene ultimately became secretary-treasurer of the company. The parties separated in 1980. In 1983, the parties signed a postnuptial agreement that provided that Irene would receive $10,000 a month in maintenance, the marital home, and various other assets. The agreement provided that the parties' most valuable asset, stock holdings in Richardson Electronics, which were valued at about $24 million at that time, were Edward's nonmarital property because he had received

granted.

the stock as a gift prior to marrying Irene.

In 1987, Edward filed a petition for dissolution of marriage, alleging that the postnuptial agreement should control the distribution of property and maintenance. During pretrial proceedings, Irene was awarded $26,700 in monthly maintenance. Trial was set for May 1990. Sometime in the fall of 1989, Irene had become dissatisfied with her attorneys and contacted plaintiff Bruzas. Irene hired Bruzas and plaintiffs Zurla and Weintraub, paying each of them a retainer. Plaintiffs researched Edward's claim that his stock holdings were nonmarital property and discovered that the stock certificates had been altered and backdated. Edward subsequently withdrew his claim that the stock was nonmarital property. However, after trial, the trial judge upheld the postnuptial agreement and the parties were divorced on December 4, 1990.

Irene hired plaintiffs to file an appeal. However, she informed them that she was unable to pay attorney fees at that time. According to plaintiffs, Irene offered to pay plaintiffs 9% interest on their attorney fees if they would represent her on appeal. Plaintiffs agreed; however, the agreement was never reduced to writing. The notice of appeal was filed on December 7, 1990. On September 11, 1992, the appellate court reversed the trial court's judgment, finding the postnuptial agreement unconscionable (*In re Marriage of Richardson*, 237 Ill. App. 3d 1067 (1992)).

The cause was remanded to the trial court and retrial began in 1992. The retrial ended in a mistrial, with the trial judge subsequently recusing herself, and the cause was assigned to a new trial judge. In 1995, plaintiffs filed an amendment to a fee

petition they had previously filed with the court in 1990, which had requested Edward to contribute to Irene's attorney fees and other costs incurred by her. The amendment included a claim for 9% interest on the fees owed to plaintiffs. The amendment was the first document filed in the divorce case to include a request for interest on attorney fees Irene owed to plaintiffs. In 1997, the trial court granted the petition and ordered Edward to pay plaintiffs the attorney fees owed. However, the court reserved the issue of plaintiffs' right to receive interest on those fees. The trial court additionally ordered Edward to pay Irene's prospective fees, to prepare for a second trial.

Prior to retrial, the parties settled on December 4, 2000, and the settlement agreement, which provided that both parties would pay their attorney fees, was proved up before the court on December 5, 2000. The final agreement awarded Irene a total of $20 million, consisting mainly of $11 million in cash, 400,000 shares of Richardson Electronics stock and her residence and its contents. Irene subsequently made a partial payment to plaintiffs for the attorney fees owed. In June 2001, Irene paid plaintiffs the balance of the attorney fees owed; however, she did not pay any of the interest that plaintiffs had charged. Irene objected to paying plaintiffs interest on the fees. In total, plaintiffs were paid about $2.3 million for the entire period they represented Irene. Plaintiffs subsequently requested Irene to pay an additional amount of over $2 million in interest. When Irene refused, plaintiffs filed this cause of action in 2002. The cause proceeded to a jury trial on three counts, one contract claim and two equitable claims.

4

At trial, plaintiffs each testified that Irene had promised to pay them 9% interest on their attorney fees from the date they filed the appeal on her behalf. Bruzas further stated that Irene mentioned to them about paying interest so many times that she "couldn't put a number on it."

Irene testified and denied agreeing to pay plaintiffs interest on their attorney fees. She stated she was aware that plaintiffs were charging interest on their fees, but she believed it was only so that Edward would have to pay the fees and interest. Irene stated that she and plaintiffs never had an agreement that she would pay interest on their fees. Irene further testified that the first time she objected to paying interest on plaintiffs' fees was in 2001.

The jury found in favor of plaintiffs on all three claims. Plaintiffs sought a total of $2,223,000 from Irene, and the jury awarded plaintiffs a total of $1,669,000. Specifically, on the contract claim, the jury awarded Bruzas $931,056.09, Zurla $346,064.93 and Weintraub $391,622.49. On the equitable claims, the jury awarded plaintiffs no damages.

ANALYSIS

Public Policy

On appeal, Irene first contends that the oral agreement to pay plaintiffs interest is void *ab initio* as against public policy because the agreement was not in writing. Irene relies on two advisory opinions from the Illinois State Bar Association (ISBA) as well as language from section 508(c)(2) of the Illinois Marriage and Dissolution of

5

Marriage Act (750 ILCS 5/508(c)(2) (West 2008)) for support.

Generally, public policy strongly favors the freedom to contract. *In re Estate of Feinberg*, 235 Ill. 2d 256, 265 (2009). However, a contract provision will be held to be against public policy " 'if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or is at war with the interests of society or is in conflict with the morals of the time.' " *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 296 (2006) (quoting *E&B Marketing Enterprises, Inc. v. Ryan*, 209 Ill. App. 3d 626 630 (1991). Whether an agreement is contrary to public policy depends upon the specific facts and circumstances of the case. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill. 2d 214, 226 (1998). Courts will invoke the power to invalidate part or all of a contract sparingly so as to not needlessly interfere with private parties' freedom to enter into contracts. *Kleinwort Benson North America, Inc.*, 181 Ill. 2d at 226. Whether a provision in a contract violates public policy is a question of law, which we review *de novo*. *Feinberg*, 235 Ill. 2d at 263.

Irene argues that two ISBA opinions, Nos. 87-10 (Mar. 11, 1998), 94-6 (July 1994), support her contention that oral agreements to pay interest are unenforceable because they violate public policy.

ISBA Opinion Nos. 87-10 and 94-6 recommend that agreements providing for the charging of interest on fees should be placed in writing prior to the accrual of any

interest.

Initially, we note that bar association opinions, formal or informal, are not binding precedent, although courts may look to them as a guide. *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 567 (2000). While we acknowledge that the above-cited ISBA opinions do recommend a prudent practice of reducing interest fee agreements to writing, we cannot say that failing to do so under the circumstances of this case was so egregious as to violate public policy. Here, although Irene testified that she never proposed to or agreed to pay plaintiffs interest on their fees, she stated she knew that plaintiffs' attorney fees contained a claim for interest. Although she stated she believed only Edward would have to pay interest on the fees, she was nevertheless aware that plaintiffs were charging interest on their fees. Furthermore, the claim for interest is reasonable in light of plaintiffs agreeing to represent Irene on appeal despite her claim that she was unable to pay them at that time.

Irene also relies on section 508(c)(2) of the Illinois Marriage and Dissolution of Marriage Act to support her contention that oral agreements to pay interest violate public policy. Section 508(c)(2) permits attorneys to petition for fees in a divorce proceeding, as long as the attorney-client fee agreement is in writing. However, section 508(c)(2) applies to cases pending on or after June 1, 1997. Irene acknowledges that her divorce case was filed before 1997 yet, she argues that the statute represents clear evidence of public policy confirming the policy set forth in the ISBA advisory opinions.

7

Here, again, we acknowledge that it would have been prudent for the oral agreement to pay interest to have been memoralized in writing. However, the failure to do so did not rise to the level of violating public policy. Therefore, we are not persuaded by Irene's contention that the oral fee agreement to pay interest in this case violated public policy.

Undue Influence

Next, Irene contends that plaintiffs exerted undue influence on her when the alleged agreement to pay interest was made and plaintiffs failed to overcome the presumption of undue influence by clear and convincing evidence.

Due to the fiduciary duty an attorney owes a client, transactions between an attorney and client are reviewed with close scrutiny. *In re Marriage of Pagano*, 154 Ill. 2d 174, 185 (1992). Accordingly, a presumption of undue influence arises when an attorney enters into an agreement or transaction with a client after the attorney-client relationship exists and the attorney benefits from the agreement or transaction. *Klaskin v. Klepak*, 126 Ill. 2d 376, 386 (1989). Undue influence is "any improper * * * urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 460 (1983). Once raised, a presumption of undue influence must be rebutted by the attorney by "clear and convincing" evidence. *Lustig v. Horn*, 315 Ill. App. 3d 319, 326 (2000). An attorney may rebut the presumption of undue influence with clear and convincing evidence that

8

the agreement was fair, equitable and just. *Pagano*, 154 Ill. 2d at 186.

Our supreme court has looked to several factors in determining whether the presumption of undue influence has been overcome, including whether: (1) the attorney made a full and frank disclosure of all relevant information; (2) the client's agreement was based on adequate consideration, and (3) the client had independent advice before completing the transaction. *Pagano*, 154 Ill. 2d at 186. Other Illinois decisions have considered slightly different factors, including whether: (1) the agreement was offered by the lawyer with unquestionable good faith and with complete disclosure, (2) the client entered into the agreement with a full understanding of all facts and their legal importance, and (3) the client's decision was free from undue influence and was fair. *Pagano*, 154 Ill. 2d at 186 (citing *In re Marriage of Bennett*, 131 Ill. App. 3d 1050, 1056 (1985), *Drake v. Becker*, 14 Ill. App. 3d 690, 694 (1973), *Gaffney v. Harmon*, 405 Ill. 273, 278 (1950)). Our supreme court noted that all factors bearing on the fairness of the transaction must be considered. *Pagano*, 154 Ill. 2d at 186.

Here, plaintiffs testified that Irene proposed on her own accord to pay 9% interest on their attorney fees if they would represent her on appeal. Having plaintiffs represent Irene on appeal was desirable to her because plaintiffs were familiar with the extensive record in the case, having just represented Irene at trial, and because Irene informed them she did not have the funds to pay attorney fees. Based upon the testimony at trial, the jury concluded that plaintiffs rebutted the presumption of undue influence. We find the jury's verdict supported by the evidence and find that under

these circumstances, the parties' agreement was fair and that plaintiffs overcame the presumption of undue influence by clear and convincing evidence.

Irene argues that because plaintiffs did not require her to seek independent legal advice before entering into the agreement, that fact supports a finding of undue influence. However, courts have held that the failure of an attorney to counsel a client to seek independent legal advice does not, by itself, mean that there has been undue influence. *Pagano*, 154 Ill. 2d at 187-88. Therefore, contrary to Irene's contention, plaintiffs were not required to counsel Irene to seek independent legal advice. Here, as stated above, under the circumstances of this case, the evidence supports the jury's verdict that the agreement was fair and that plaintiffs overcame any presumption of undue influence.

Fiduciary Duty

Next, Irene contends that plaintiffs breached their fiduciary duty by failing to disclose to her that they were going to collect interest on their fees.

Here, however, according to plaintiffs' testimony, Irene proposed the idea to pay plaintiffs interest because she was unable to pay their fees if they represented her on appeal. Irene also testified numerous times she was aware that plaintiffs' fees included a claim for interest. Irene denied, however, knowing or understanding she was responsible for paying the interest, rather than Edward. Therefore, when the parties settled and agreed as part of the settlement to pay their own attorney fees, Irene became responsible to pay plaintiffs' fees, which included a claim for interest. We can

10

find no breach of fiduciary duty under these circumstances when Irene was aware that plaintiffs were charging interest on their fees.

Whether Jury's Finding of a Contract Was Against Manifest Weight of the Evidence

Next, Irene contends the jury's finding that a contract for the payment of interest existed was against the manifest weight of the evidence. Irene specifically argues that the evidence at trial did not establish that the parties had a meeting of the minds because no specific terms were discussed.

Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement. *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146 (1997). A contract will be enforceable if the material terms of the contract are definite and certain. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314 (1987). The terms of a contract will be found to be definite and certain, and therefore the contract enforceable, if a court is able to ascertain what the parties have agreed to, using proper rules of construction and applicable principles of equity. *Midland Hotel Corp.*, 118 Ill. 2d at 314. A verdict is contrary to the manifest weight of the evidence only when an opposite conclusion is apparent or when its findings appear to be unreasonable, arbitrary, or not based on the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

Here, the agreement to pay plaintiffs interest at 9% on their attorney fees was a valid and enforceable contract. The material term of the contract was that plaintiffs would receive 9% interest on the attorney fees they incurred in pursuing Irene's appeal

11

in the divorce case. Irene proposed the 9% term prior to plaintiffs agreeing to represent her on appeal. Therefore, the 9% term had a definite starting date. The jury was able to ascertain what the parties had agreed to do when it was able to determine the interest owed to plaintiffs as evidenced by its verdict. The jury's finding was based on the evidence presented at trial and was not arbitrary or unreasonable.

Compromised Verdict

Next, Irene argues that the jury's verdict should be set aside and a new trial ordered because the verdict was a compromised verdict due to the jury's award of damages less than the amount sought by plaintiffs.

A jury verdict that indicates compromises were made on damages and liability cannot be allowed to stand. *Winters v. Kline*, 344 Ill. App. 3d 919, 926 (2003). An award of damages that does not bear a reasonable relationship to the evidence presented at trial is an indication of a compromised verdict. *Winters*, 344 Ill. App. 3d at 926.

Here, plaintiffs sought a total of $2,223,000 from Irene, and the jury awarded plaintiffs a total of $1,669,000, which is a difference of $554,000. However, merely because the amount plaintiffs sought was more than the jury's ultimate award does not by itself indicate a compromised verdict. Plaintiffs maintain that the verdict was not compromised but can be explained by the jury's award of postjudgment interest at the statutory rate of 5% rather than 9%. Because the jury's verdict is reasonably related to the evidence presented at trial, we find no indication of a compromised verdict.

Jury Instruction

Lastly, Irene contends that a new trial should be ordered because the trial court's jury instruction regarding fiduciary duty, as given, was improper.

The trial court evaluates if a jury instruction is applicable, supported by the evidence in the record and is an accurate statement of the law. *Luye v. Schopper*, 348 Ill. App. 3d 767, 773 (2004). The decision to give or deny a jury instruction is within the trial court's discretion. *Townsend v. Fassbinder*, 372 Ill. App. 3d 890, 902 (2007).

The jury instruction at issue is Illinois Pattern Jury Instructions, Civil, No. 700.12G[7] (2006) (hereinafter, IPI Civil (2006) No. 700.12G[7]). The instruction provides, in part:

"Plaintiff claims and has the burden of proving the following by clear and convincing evidence in order to enforce the contract:

(1) the contract was fair;

(2) the contract did not result from any undue influence over the defendant(s); and

(3) defendant had independent advice." IPI Civil (2006) No. 700.12G[7].

Over Irene's objection, the trial court gave a modified version of the instruction. The modified instruction provided:

"[Plaintiffs have the burden of proving the following by clear and convincing evidence in order to enforce the contract, one, the contract was fair; two, the contract did not result from any undue influence over the defendant; and, three, the defendant had

13

independent advice or had the opportunity to obtain independent advice."

Irene argues that the instruction as given was improper because the IPI instruction accurately stated the law that to disprove undue influence, plaintiffs had to prove that Irene had obtained independent advice. However, as stated above regarding undue influence, it is clear that the failure of an attorney to counsel a client to seek independent legal advice does not, by itself, mean that there has been undue influence. See *Pagano*, 154 Ill. 2d at 188. Therefore, the instruction as given that defendant had independent advice or had the opportunity to obtain independent advice was supported by the evidence in the record and was an accurate statement of law. We find no abuse of discretion.

## Cross-Appeal

Plaintiffs cross-appeal from the trial court's dismissal of the equitable claims brought in their complaint. However, plaintiffs state that their equitable claims are brought in the alternative and that if this court affirms the jury's verdict for damage awards based on the contract claim, their cross-appeal is moot. Here, because we are affirming the verdict and judgment below, we need not reach the merits of plaintiffs' cross-appeal.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

1-09-0495

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

DIANE M. BRUZAS, JEROME N. ZURLA and GARY A. WEINTRAUB,

      Plaintiffs-Appellees and
      Cross-Appellants,

v.

IRENE E. RICHARDSON,

      Defendant-Appellant and
      Cross-Appellee.

---

No. 1-09-0495

Appellate Court of Illinois
First District, Second Division

March 22, 2011

---

JUSTICE KARNEZIS delivered the judgment of the court, with opinion.

Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

---

Appeal from the Circuit Court of Cook County.

The Honorable Dennis J. Burke.

---

For APPELLANT, HARRISON AND HELD, LLP (Robert S. Held, George N. Vurdelja, Jr., of counsel)

For APPELLEE, DAVID A. EPSTEIN LTD. (David A. Epstein, Esq.,), BROWN, UDELL,

1-09-0495

POMERANTZ & DELRAHIM, LTD., of counsel.