THOMAS P. VALENTI, P.C., Plaintiff-Appellee, v. LORRAINE SWANSON et al., Defendants-Appellants.

Third District   No. 3—97—0371

Opinion filed January 22, 1998.

Patrick M. Loftus, of Law Offices of Patrick M. Loftus, of Addison, for appellants.

Thomas P. Valenti, of Thomas P. Valenti, P.C., of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

In this case we are asked to rule that an attorney may not recover legal fees under a theory of *quantum meruit* if he fails to comply with the Personal Injury Representation Agreement Act (Act) (815 ILCS 640/0.01 *et seq.* (West 1996)). We disagree that such a holding is required by Illinois law and thus affirm the trial court's judgement.

## FACTS

The facts are relatively undisputed. On October 7, 1994, Lorraine and Arthur Swanson were involved in an automobile accident. Four days later, they hired attorney Valenti to represent them on a contingent fee basis. Valenti did not provide the Swansons with a copy of the Act. About eight months later, the contingent fee agreement was terminated at the Swansons' request. The Swansons subsequently settled their personal injury claim. Valenti then filed suit against the Swansons seeking $8,475 (28.25 hours at $300 per hour) in damages under a *quantum meruit* theory. Following a hearing, the trial court awarded Valenti $3,150 (14 hours at $225 per hour) plus court costs. The Swansons appeal.

## BACKGROUND

■ In Illinois, clients may discharge their attorney at any time, with or without cause. *Warner v. Basten*, 118 Ill. App. 2d 419, 255 N.E.2d 72 (1969). In the past, the discharged attorney was entitled to full contract fees if the dismissal was without cause. See *Town of Mt. Vernon v. Patton*, 94 Ill. 65 (1879); *Warner*, 118 Ill. App. 2d 419, 255 N.E.2d 72; *Miller v. Solomon*, 49 Ill. App. 2d 156, 199 N.E.2d 660 (1964). However, awarding full contract fees to a discharged attorney encouraged the unseemly practice of "ambulance chasing." Thus, in 1971 in an effort to curb such unsavory conduct, the legislature passed the Act. It provides that any agreement for representation in a personal injury case that is made within five days of the injury may be avoided by the injured party. 815 ILCS 640/1 (West 1996). One of the requirements is that the attorney provide the clients with a copy of the Act at the time the contingent fee agreement is entered into. 815 ILCS 640/1 (West 1996).

Subsequently, in 1979 our supreme court rejected the old rule that a discharged attorney is entitled to full contract fees if the dismissal was without cause. *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 399 N.E.2d 969 (1979). Instead, an attorney discharged without cause may only be entitled to recovery under a theory of *quantum meruit. Rhoades*, 78 Ill. 2d at 230, 399 N.E.2d at 975. The Swansons argue that, regardless, the Act prohibits a noncomplying attorney from recovering not only under the representation agreement, but also by *quantum meruit.*

## ANALYSIS

■ The only legitimate function of the courts is to interpret the law as enacted by the legislature, not to annex new provisions or substitute different ones. *Belfield v. Coop*, 8 Ill. 2d 293, 134 N.E.2d 249 (1956). In construing a statute, it is presumed that the legislature did not intend unjust, absurd or unreasonable consequences. *People v. Wireman*, 181 Ill. App. 3d 385, 536 N.E.2d 1346 (1989). The Act provides:

> "Any person who makes an agreement with any other person to represent him in his claim for settlement of a personal injury claim within 5 days after the occurrence which gave rise to the claim may, within a 10 day period after the occurrence elect to avoid the agreement by notifying the other person in writing of the election by registered or certified mail, return receipt requested.
>
> The person undertaking the representation of the injured party by such an agreement must, at the time of the agreement, furnish the party with whom the agreement is made [with] a copy of the

agreement and the address to which the notice may be sent and a copy of this Act, and obtain written acknowledgement of receipt of such from the party represented. If he fails to do so, the 10 day period provided for in this Act does not commence to run until the agreement, address and a copy of this Act are furnished." 815 ILCS 640/1 (West 1996).

■ It is undisputed that, under the Act's plain language, the Swansons were allowed to avoid the agreement because Valenti did not provide them with a copy of it. However, the Act makes no reference to *quantum meruit* recovery and we can glean no intent to bar such recovery from its language.

Furthermore, we find no intent to bar *quantum meruit* recovery in the legislative history. The Senate floor debates regarding the Act reveal that it is intended to discourage "ambulance chasing" by giving the injured person time to consider his injuries and his options. There is no mention of *quantum meruit* in any discussions of the Act. Accordingly, we are unable to say that there is an express legislative intent to preclude such recovery.

Additionally, after carefully reviewing the Act and the attendant policy considerations, we are unable to say that it is necessary to read a prohibition against *quantum meruit* recovery into the Act to avoid absurd results. It is readily apparent that the purpose of the Act is to shield injured people who hastily enter into personal injury representation agreements without due consideration of all the relevant facts. But precluding attorneys from recovering fees for legal services provided within the first 10 days of an injury, a time period in which sound legal advice may be extremely important, would discourage attorneys from providing such services. This result would be contrary to the spirit of the Act.

The Swansons argue that allowing *quantum meruit* recovery would encourage attorneys to delay giving notice of the Act until such time as the attorney's potential recovery under *quantum meruit* makes a client's election to avoid the agreement financially punitive. Such a circumstance is not likely. There are strong financial incentives for attorneys to comply with the Act because noncompliance would limit them to *quantum meruit* recovery rather than full recovery. Additionally, the trial courts will carefully scrutinize such claims with the view that *quantum meruit* recovery is equitable in nature and is limited to the reasonable value of the services provided. That is exactly what the trial court did in this case.

## CONCLUSION

For these reasons, we hold that *quantum merit* recovery may be attained even though the attorney failed to comply with the require-

ments of the Act. Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McCUSKEY, P.J., and SLATER, J., concur.